Justin T. Beck (Cal. Bar No. 53138)
Alfredo A. Bismonte (Cal. Bar No. 136154)
Ron C. Finley (Cal. Bar No. 200549)
Jeremy M. Duggan (Cal. Bar No. 229854)
Beck, Ross, Bismonte & Finley, LLP
50 West San Fernando Street, Suite 1300
San Jose, CA 95113
Tel: (408) 938-7900
Fax: (408) 938-0790
Email: jbeck@beckross.com
       abismonte@beckross.com
       rfinley@beckross.com
       jduggan@beckross.com

David C. Hsia (Cal. State Bar No. 197391)
Carmen C. Cook (Cal.. State Bar No. 197708)
Patent Law Group LLP
2635 N. First Street, Suite 223
San Jose, California 95134
Telephone: (408) 382-0480
Facsimile: (408) 382-0481
Email: david@patentlawgroup.com
       carmen@patentlawgroup.com

Attorneys for Defendant and Cross Claimant
Integrated Silicon Solution, Inc.

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PENG TAN, an individual., <br><br> Plaintiff, <br><br> INTEGRATED SILICON SOLUTIONS, INC. et. al. <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | **Case No. C-07-06166 WHA** <br><br> **INTEGRATED SILICON SOLUTION, INC.'S MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY AND FOR LEAVE TO FILE A SUPPLEMENTAL ANSWER AND COUNTERCLAIM** <br><br> Date: May 29, 2008 <br> Time: 8:00 a.m. <br> Place: Courtroom 9, 19th Floor <br><br> Honorable Judge Alsup |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 29, 2008 at 8:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 9 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Integrated Silicon Solution, Inc. ("ISSI"), will move and hereby does move for summary judgment of invalidity of all asserted claims of U.S. Patent No. 4,682,857 and for leave to file a supplemental answer and counterclaim asserting the defense of collateral estoppel (issue preclusion) with respect to claim 11 of the patent.  This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying declaration of Alfredo Bismonte and exhibits thereto, the complete records and files of this action, the arguments of counsel, and such additional evidence as the Court may consider, and all matters of which the Court may take judicial notice.  This motion is made pursuant to Federal Rules of Civil Procedure 15(d) and 56.

Beck, Ross, Bismonte & Finley, LLP

Date: April 24, 2008     By: _____/s/_____
                          Justin T. Beck
                          Alfredo A. Bismonte
                          Ron C. Finley
                          Jeremy M. Duggan
                          Attorneys for Defendant and Counterclaimant
                          Integrated Silicon Solution, Inc.

**CONCISE STATEMENT OF RELIEF SOUGHT**

ISSI moves for summary judgment of invalidity of all asserted claims[1] of expired U.S. Pat. No. 4,682,857 (the '857 patent).[2] Claims 1 and 4-10 are invalid because they incorporate "new matter" prohibited by 35 U.S.C. § 132, and therefore are not supported by the original disclosure (35 U.S.C. § 112 ¶1). Claim 11 has already been found invalid by the Board of Patent Appeals and Interferences (the "Board") in a March 28, 2007 decision[3] as modified by a March 10, 2008 decision.[4] Plaintiff is precluded from relitigating the validity of that claim in this Court. Alternatively, claim 11, if not anticipated by the prior art, is obvious in light of that art. Because collateral estoppel or issue preclusion is an affirmative defense, ISSI also moves for leave to file a supplemental answer and counterclaim pleading that defense.

**POINTS AND AUTHORITIES**

**1.  INTRODUCTION**

Since Plaintiff improperly amended the original specification during the prosecution of the '857 patent, finding claims 1 and 4-10 invalid is factually simple and presents straightforward claim construction issues: Construe the relevant claim term, then determine if the addition of new matter render the asserted claims invalid.

To decide this motion, the Court must construe the phrase "**heat generating means**" in claim 1 and dependent claims 4-10. Because "heat generating means" is clearly a means-plus-function limitation governed by 35 U.S.C. § 112 ¶6, the Court must identify the structures described in the specification corresponding to the claimed "heat generating means" for performing that function. Having construed "heat generating means" and having identified the corresponding structures, the Court should determine if any of those structures are "new matter" added by amendment in violation of 35 U.S.C. §132. If, as construed by the Court, the "heat

---

[1] Claims 1 and 4-11 are asserted. *See* Plaintiff Peng Tan's Initial Disclosure of Asserted Claims and Preliminary Infringement Contentions, dated March 20, 2008, at 2. It appears that Plaintiff is seeking to conditionally assert Claim 11 (Exhibit E to Bismonte Decl.).
[2] The '857 patent (which highlighted sections) is attached as Exhibit C to the Bismonte Decl.
[3] Exhibit F to Bismonte Decl.
[4] Exhibit G to Bismonte Decl.

ISSI'S MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT
Case No. C-07-06166 WHA

1

generating means" of claims 1 and 4-10 include prohibited new matter, those claims are invalid for violation of 35 U.S.C. § 112 ¶1 (written description).

That leaves claim 11. When the '857 patent was put into reexamination, claim 11 was rejected as anticipated by the prior art. The Examiner's final rejection of claim 11 was appealed to the Board pursuant to 35 U.S.C. §§ 134(b) and 306. The Board affirmed the final rejection in a March 28, 2007 decision. Plaintiff sought reconsideration of that decision, and the Board entered a second decision on March 10, 2008, modifying its earlier decision but still affirming the final rejection of claim 11. That decision is now final for purposes of claim preclusion, and accordingly Mr. Tan is barred by that doctrine from relitigating the validity of claim 11 in this Court. Alternatively if this Court declines to find estoppel in these circumstances, and rejects the analysis of the Board, claim 11 is obvious in light of the prior art.

## 2.     BACKGROUND

Engineers have long recognized that liquid crystal ("LC") can be used to identify "hot spots" on a semiconductor chip. This technique takes advantage of the fact that LC changes color when heated beyond its phase transition temperature. Thus surface areas of higher temperature will appear as dark spots or regions. This technique can be used for thermal mapping of the surface of a die and for detection of electrical shorts. *See* '857 patent at col.1:15-56; Jung Decl. submitted by Plaintiff in prior Northern District of California litigation ("Jung Decl.").[5]

Plaintiff claims to have invented an improvement in the use of LCs for "hot spot detection." Plaintiff's improvement is a method he calls "infinitesimal temperate control," in which the temperature of the liquid crystal is carefully controlled and "brought infinitesimally close [sic] below to liquid crystal phase transition temperature…." '857 patent at col. 3:5-6. In that way, hot spots at even very low power can be detected. *See* '857 patent at col. 6:53-55 ("[T]he lowest detectable wattage of a hot spot is in the order of 1 microwatt.").[6]

---

[5] March 23, 2000 Declaration of Frank Jung in Support of Plaintiff Peng Tan's Opposition to AMD's Motion for Summary Adjudication that Claim 11 of U.S. Patent No. 4,682,857 is Invalid. (Exhibit D to Bismonte Decl.)

[6] Claim 11, already found invalid by the USPTO, is broader as it does not include an "infinitesimal temperature control" limitation.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

### a. The Application and 1987 Amendment

Plaintiff, despite professing limited skills in written English, wrote and prosecuted the '857 patent himself. He filed the original application on April 2, 1985.[7] Nearly two years later, in response to the first office action, he submitted 19 pages of amendments to the application including about 125 separate changes. ISSI 00055-00075.

Mr. Tan told the examiner that the amendments were merely intended to improve readability of his application. "Due to my lack of expertise in English, I have hired a technical writer to edit my submission. Although the work now reads better, I hope that the length of the necessary corrections does not inconvenience you." ISSI 00046.

Plaintiff's explanation to the USPTO was misleading. Many changes may be ascribed to Plaintiff's poor English – but far from all. Included in the amendments were several that expanded the scope and nature of the claimed invention. Representative of those amendments is the following which was requested in ISSI000057 and appears in the '857 patent at col.1:62-col. 2:11 (emphasis added):

> The infinitesimal temperature control method can be achieved **by many forms of heating means, such as, but not limited to, a conductive hot plate, a convective oven or a radiative heating light.** All these heating means work with various degrees of effectiveness in the invented infinitesimal temperature control method. The key to the said infinitesimal temperature control method is that the heating means operates in a repeatedly turning on and turning off mode. It is during the turning on mode that the heating means will gradually heat up the liquid crystal film and will bring the film temperature infinitesimally close below to the liquid crystal phase transition temperature. To illustrate the said infinitesimal temperature control method, a detailed radiative heating light heating system is described in the SUMMARY OF THE INVENTION and the DETAILED DESCRIPTION OF THE INVENTION.
>
> It should be emphasized that it is not the detailed design of the heating means that contributes to the primary success of bringing the liquid crystal film temperature infinitesimally close below to the liquid crystal phase transition temperature, rather it is the invented method of operating the heating means at a repeatedly turning on and turning off mode.

---

[7] Attached to the Bismonte Decl., are excerpts of the '857 file wrapper labeled ISSI 00012-31 (original application) as Exhibit A and ISSI 00046-79 (1987 amendment) as Exhibit B.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

This amendment, adding a variety of new structures for heating the LC, was repeated in similar language four more times, at the end of the abstract, and in the specification at col. 3:12-20; col. 4:16-33; col. 7:38-54.  Attached as Exhibit C to the Bismonte Decl., is a copy of the '857 patent as issued, with the non-grammatical amendments highlighted.

Suffice it to say, the original application only disclosed a 4-lamp radiant heater and nowhere suggested that other heating means could be used. *See* ISSI 00066. "Convection ovens" were never mentioned, and "conductive methods" used in the prior art were disparaged as inferior because "the liquid crystal film's temperature response slowly to the conductive heat transfer because a large poor heat conductor exists between the liquid crystal film and the conductor heating system." '857 patent at col.1:49-52; ISSI 00015.

Consistent with the changes in the disclosure, the claims were also amended – including specifically in what became new claim 1 the "heating lamp" limitation became the broader "heat generating means."  ISSI 00070-72.

### b.  Claim Construction

The first step in validity analysis is claim construction. The claim construction issue in this motion is straightforward.  "Heat generating means" is a means-plus-function limitation, subject to § 112 ¶6.  *See, e.g.*, *Geo. M. Martin Co. v. Alliance Machine System International, LLC.*, 2007 U.S. Dist. LEXIS 86405 at *16-20 (N.D. Cal. 2007) (Alsup, J.).  ISSI believes the function has its ordinary meaning, and needs no further construction.  The heat generating means generates the heat that brings the LC to the desired temperature.  The structures described in the specification that perform this function are the preferred four light bulb heat lamp based radiative heating system, described at 5:53-6:12.  While general references to other possible unidentified structures have no weight, *Fonar Corp. v. General Electric Co.*, 107 F.3d 1543, 1551-52 (Fed. Cir. 1997), the specification also identifies "a conductive hot chuck" or "plate" and a convective heat oven as specific alternative structures for performing the heat generating function.  Thus the "heat generating means" includes a four light bulb heat lamp, a conductive hot chuck, and a convective

heat oven,[8] and the equivalents of each of those structures. *Serrano v. Telular Corp.*, 111 F.3d 1578, 1582 (Fed. Cir. 1997); *Ishida Co. Ltd. v. Taylor*, 221 F.3d 1310, 1316 (Fed. Cir. 2000); *Geo. M. Martin,* 2007 U.S. Dist. LEXIS 86405 at * 19-20.  Thus the correct construction of "heat generating means" is as follows:

**"Heat Generating Means"** is a means-plus-function limitation.  The function is generating heat.  The structures that perform that function are heating lamps **7, 24, 25 and 26** ('857 patent at 5:66-7); or a single heating lamp, or a conductive hot plate, or a convective oven ('857 patent at 7:43-46) and the equivalents of each.

### 3. INVALIDITY

#### a. Claims 1 and 4-10 Are Invalid Due To Improper New Matter

The construction of "heat generating means" renders claims 1 and 4-10 invalid, because both the "conductive hot chuck" and the "convective heat oven" are new matter, added to the application by the 1987 amendment.  See Exhibits B and C to Bismonte Decl.  The original application only disclosed and linked the four-lamp radiative heating system to the heat generating function.  No alternatives to the four heating lamps were mentioned and in particular no convective heat oven was ever mentioned.  "Conductive" heating was mentioned only as an unsuitable prior art technique.

> "Also, prior to this invention, the heating mode was either conductive (see reference 2) or no heating at all (see reference 1).  The liquid crystal film's temperature responds slowly to the conductive heat transfer, because a large poor heat conductor exists between the liquid crystal film and the conductive heating system.  The same large poor heat conductor induces an uneven temperature profile on the liquid crystal film, thus reducing the sensitivity of the liquid crystal hot spot detection method."[9]

There can be no doubt that the addition of a "convective oven" is new matter.  It was not disclosed in the original application,[10] and is not inherent in what was disclosed.[11]  The original

---

[8] *See e.g.* ISSI 00066; '857 patent at col.7:38-54.

[9] '857 patent at col. 1:47-56; ISSI 00015.  While irrelevant to the ultimate issue of whether claims 1 and 4-10 are supported by new matter, for claim construction purposes, the court should consider whether this reference to "conductive heating" in the prior art is sufficient structure.

[10] Exhibit C to Bismonte Decl.

application describes an invention that includes only radiative heating, which the inventor touted as superior to the prior art's "conductive heating." '857 patent at col. 1:47-56; ISSI 00015.

Claims supported by improper new matter are invalid under § 112 ¶1 (written description). The interplay between § 132 and § 112 ¶1, has been explained by the Federal Circuit in this way:

> The written description requirement and its corollary, the new matter prohibition of *35 U.S.C. § 132*, both serve to ensure that the patent applicant was in full possession of the claimed subject matter on the application filing date. When the applicant adds a claim or otherwise amends his specification after the original filing date, as Brandon did in this case, the new claims or other added material must find support in the original specification. *Schering Corp. v. Amgen Inc.,* 222 F.3d 1347, 1352, 55 U.S.P.Q.2D (BNA) 1650, 1653 (Fed. Cir. 2000) ("The fundamental inquiry is whether the material added by amendment was inherently contained in the original application."); *Vas-Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563, 19 U.S.P.Q.2D (BNA) 1111, 1116 (Fed. Cir. 1991) ("The test for sufficiency of support . . . is whether the disclosure of the application relied upon 'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.'") (quoting *Ralston Purina Co. v. Far-Mar-Co, Inc.,* 772 F.2d 1570, 1575, 227 U.S.P.Q. (BNA) 177, 179 (Fed. Cir. 1985)).

*Turbocare Div. of Demag Delaval Turbomachinery Corp. v. General Electric Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001).

In other words, because "heat generating means" as properly construed by the Court include "convective ovens" not supported by the original application, the claims containing that limitation are invalid because they are not the invention described in that application. No reasonable jury could find that the original application expressly or implicitly discloses a "convective oven."[12] Even if the substitution of a convective oven for the 4-lamp heating means were obvious, that would not be enough. *Lockwood v. American Airlines, Inc.,* 107 F.3d 1565,

---

[11] *Atari Games Corp. v. Nintendo of Am.,* 1993 U.S. Dist. LEXIS 8183, at *59-60 (N.D. Cal. 1993) ("Evidence of inherency 'must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill.'" (quoting *Continental Can Co., USA, Inc. v. Monsanto Co.* 948 F.2d 1264, 1268-69 ("Inherency, however, may not be established by probabilities or possibilities."))).

[12] Relying on dicta from *Brooktree Corp. v. Advanced Micro Devices, Inc*., 977 F.2d 1555, 1574-1575 (Fed. Cir. 1992), plaintiff will presumably argue that the examiner's allowance of the amendment without a new matter objection "is entitled to an especially weighty presumption of correctness." But that is merely dicta, and subsequently the Federal Circuit has found the contrary. *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1329 (Fed. Cir. 2000).

ISSI'S MOTION FOR SUMMARY JUDGMENT                6
OF NON-INFRINGEMENT
Case No. C-07-06166 WHA

1572 (Fed. Cir. 1997). "In order for a disclosure to be inherent, 'the missing descriptive matter must necessarily be present in the [original] application's specification such that one skilled in the art would recognize such a disclosure.'" *Turbocare*, 264 F.3d at 1119, citing *Tronzo v. Biomet, Inc.,* 156 F.3d 1154, 1159 (Fed. Cir. 1998). There is nothing in the original application that would disclose to a person of skill that in 1985 Tan necessarily believed that a "convective oven" was part of his invention.

### b.   The USPTO Has Found Claim 11 Invalid

Last month, in the Joint Case Management Conference Statement, Mr. Tan's counsel told this Court that claim 11 was not being asserted. Because of this representation, ISSI did not seek to stay this case pending completion of reexamination proceedings on the '857 patent. Now, with no explanation, Mr. Tan asserts claim 11, even though it has been found invalid by the PTO.[13] This unfortunately burdens the parties and the Court with an additional issue – the validity of claim 11 – that ISSI hoped would be avoided.

To be sure, the Court can stay proceedings pending Mr. Tan's appeal, if the Court believes that would be more efficient. See *Broadcast Innovations, L.L.C. v. Charter Communications, Inc.*, 2006 U.S. Dist. LEXIS 46623 (D. Colo. 2006); *Ricoh Company, Ltd. v. Aeroflex, Inc*, 2006 U.S. Dist. LEXIS 93756 (N.D. Cal. 2006). On the other hand, there seems to be little gained by waiting for Mr. Tan's appeal.

As discussed in below, claim 11 is invalid (a) because Mr. Tan is precluded from relitigating the validity of claim 11 in this court by the Board of Patent Appeals and Interferences ("Board") March 28, 2007 Decision,[14] as modified by the Board's March 10, 2008 Decision on Request for Rehearing;[15] and (b) because even if not anticipated, claim 11 is obvious in light of the art relied upon by the Board.

---

[13] Mr. Tan has until May 10, 2008 to appeal the final decision of the Board to the Federal Circuit. Since Mr. Tan is now asserting claim 11, presumably he intends to appeal.
[14] Attached as Exhibit F to Bismonte Decl ("March 27, 2007 Decision").
[15] Attached as Exhibit G to Bismonte Decl. ("March 10, 2008 Decision").

ISSI'S MOTION FOR SUMMARY JUDGMENT                                7
OF NON-INFRINGEMENT
Case No. C-07-06166 WHA

Collateral estoppel precludes Plaintiff from religating the validity of claim 11 in this Court. The classic application of defensive collateral estoppel[16] in a patent case is *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971), holding that a finding of patent invalidity should be given preclusive effect if the patentee had a full and fair opportunity to litigate the issue in the earlier proceeding. *See also Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1203-1204 (Fed. Cir. 2007) summarizing *Blonder-Tongue* as permitting "the use of defensive collateral estoppel when the accused infringer shows 1) that a patent was found invalid in a prior case that had proceeded through final judgment and in which all procedural opportunities were available to the patentee; 2) that the issues litigated were identical; and 3) that the party against whom estoppel is applied had a full and fair opportunity to litigate."

Although this is a patent case, the application of collateral estoppel here is governed by Ninth Circuit law. *Vardon Golf Co. v. Karsten Mfg. Corp.*, 294 F.3d 1330, 1333 (Fed. Cir. 2002).[17] There is no doubt that a decision of the Board can be given preclusive effect. *See United States v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966); *Exxon Corp. v. Fischer*, 807 F.2d 842, 845-46 (9th Cir. 1987). Mr. Tan had a full and fair opportunity to litigate the validity of Claim 11 before the Board and he lost. Finally, the Board's decision is final for purposes of issue preclusion even if appealed. *See Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988); *SSIH Equipment S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 370 (Fed. Cir. 1983).

If for some reason, this Court declines to apply issue preclusion to Claim 11, and chooses to make an independent determination of validity, the Board's decision is persuasive. The Court should note that there were two constructions, one by Judges Martin and Barrett, and a second by Judge Lee. But under either construction, claim 11 is anticipated by Aszodi.[18]

---

[16] Collateral estoppel is often referred to by the more up-to-date phrase "issue preclusion." The terms are used interchangeably by the courts, and in these papers.

[17] "The party invoking issue preclusion must demonstrate that: (1) the issue at stake is identical to an issue raised in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a necessary part of the judgment in that action." *Asustek Computer Inc. v. Ricoh Company Ltd.*, 2007 U.S. Dist. LEXIS 86302, at *9 (N.D. Cal. 2007), citing *Littlejohn v. United States,* 321 F.3d 915, 923 (9th Cir. 2003).

[18] The Aszodi prior art (labeled ISSI 01224-29) from the USPTO Reexamination File is attached as Exhibit I to the Bismonte Decl.

ISSI'S MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT
Case No. C-07-06166 WHA

8

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1   Even the narrow construction of Claim 11 urged by plaintiff in the reexamination would not save it under *KSR*. If Claim 11 is not anticipated by Aszodi, it certainly is obvious. A person of ordinary skill knowing that K-24 can be used for thermal mapping of chips would certainly that K-24 could be used on failed chips to find shorts. Any LC that produces a thermal map will also indicate the location of hot spots. There is simply nothing inventive in using an LC known to be suitable for thermal mapping to detect hot spots.

### 4.   ISSI SHOULD BE GIVEN LEAVE TO FILE ITS SUPPLEMENTAL ANSWER

Rule 15 permits the filing of supplemental pleadings reflecting subsequently occurring events. Here the decisions of the Board were not yet final when ISSI filed its answer and counterclaim. Thus, the events giving rise to the estoppel occurred after the answer was filed. While leave is discretionary, the Ninth Circuit has suggested that supplemental pleadings are a "tool of judicial economy and convenience" whose "use is therefore favored." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) Indeed, the Ninth Circuit has suggested that supplemental pleadings are so useful "that they ought to be allowed as of course, unless some particular reason for disallowing them appears." *Id.*, quoting *New Amsterdam Co. v. Waller*, 323 F.2d 20, 28-29 (4th Cir. 1963).

ISSI has moved promptly upon discovery that the Board's decision became final, and there is no prejudice to the Plaintiff in allowing such an amended pleading.

### 5.   CONCLUSION

As set forth above, all asserted claims of the '857 patent are invalid, and ISSI is entitled to summary judgment of invalidity.

Beck, Ross, Bismonte & Finley, LLP

Date: April 24, 2008        By: _____/s/_____
                                Justin T. Beck
                                Alfredo A. Bismonte
                                Ron C. Finley
                                Jeremy M. Duggan
                                Attorneys for Defendant and Counterclaimant
                                Integrated Silicon Solution, Inc.