# EXHIBIT E

MICHAEL E. DERGOSITS (State Bar No. 118206)
TEDDY K. JOE (State Bar No. 242589)
**DERGOSITS & NOAH LLP**
Four Embarcadero Center, Suite 1450
San Francisco, California 94111
Telephone: (415) 705-6377
Facsimile: (415) 705-6383
email: mdergosits@dergnoah.com
email: tjoe@dergnoah.com

Attorneys for PENG TAN

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PENG TAN, an individual<br><br>Plaintiff,<br><br>v.<br><br>INTEGRATED SILICON SOLUTION, INC., a Delaware corporation; and WINBOND ELECTRONICS CORPORATION, a Taiwanese corporation<br><br>Defendants. | Civil Action No: C 07-06166 WHA<br><br>**PLAINTIFF PENG TAN'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS** |

Pursuant to Patent L.R. 3-1, plaintiff Peng Tan ("Tan") hereby makes the following Initial Disclosure of Asserted Claims and Preliminary Infringement Contentions to Defendant Integrated Silicon Solutions, Inc. ("ISSI").

The disclosures set forth below are based on information reasonably available to Tan at this time, following an inquiry that is reasonable under the circumstances. As of the time of this disclosure, Tan has not received any discovery or initial disclosure document productions from ISSI (or its contractor or its agents) (hereinafter collectively referred to as "ISSI"). Tan has

served a request for production of documents and interrogatories concerning ISSI's failure analysis methods. The time for response has been extended until April 7, 2008. Tan requested postponing the service of these Initial Disclosures until after ISSI responds to the outstanding document requests, but ISSI refused. U.S. Patent No. 4,682,857 (the '857 patent) includes claims directed to processes. These processes are practiced behind closed doors within semiconductor companies such as ISSI. Because of these processes are practiced behind closed doors, they may be considered trade secrets, and may therefore not be readily available to Tan. As such, these disclosures may lack key information that may be found in initial disclosures and in responses to propounded discovery, especially those documents and interrogatories directed to ISSI's failure analysis methods.

Pursuant to Patent L.R. 3-6 and Fed.R.Civ.P. 26(e), Tan reserves the right to supplement its Preliminary Infringement Contentions and/or to produce additional information during the course of discovery, and to rely on such information as evidence in this action.

### A. INITIAL DISCLOSURE OF ASSERTED CLAIMS OF U.S. PAT. NO. 4,682,857

Tan asserts that ISSI infringed claims 1, 4-10 of the '857 patent in violation of Title 35 of the United States Code Section 271, either literally or under the doctrine of equivalents. Technology Associates sold Liquid Crystal A, which is also known as K-18, one of the liquid crystals specifically described and claimed in the '857 patent. Technology Associates also issued a manual that specifically teaches the methods described and claimed in the '857 patent. ISSI has purchased Liquid Crystal A for use in hot spot failure analysis detection and has thereby practiced the methods set forth in the '857 patent, thereby infringing claims of the '857 patent. At the time that this Complaint for patent infringement was being filed, claim 11 stood finally rejected in Reexamination Control No. 90/006696. Tan is in the process of appealing the decision of the Board of Patent Appeals and Interferences, affirming the final rejection of claim 11 to the Federal Circuit. To the extent that the patentability of claim 11 is confirmed in the pending reexamination proceeding, ISSI infringes claim 11 through its use of Liquid Crystal A in hot spot detection.

1  Tan is not waiving his right or ability to present an alternative theory of infringement of claims 1
2  and 4-10 based upon the doctrine of equivalents. Because of the lack of document production by
3  ISSI and because of the lack of discovery from ISSI, Tan has not formulated any final contentions
4  concerning a theory of infringement under the doctrine of equivalents at this time. Pursuant to
5  Patent L.R. 3-6, Tan hereby reserves the right to assert additional or different claims against the
6  accused methods and to supplement this disclosure when new or additional information becomes
7  available from ISSI and from third parties.
8      In this case, all of the failure analysis work performed at ISSI using liquid crystals took
9  place within the confines of ISSI. After investigation, Tan is not able to determine with any
10 further detail anything more specific about the processes and equipment used by ISSI.
11     Tan also notes that ISSI has admitted informally in 2003, and again in 2008, that their
12 failure analysis engineers performed hot spot detection analysis using Liquid Crystal A on more
13 than one occasion between December 2001 and the expiry date of the '857 patent.

ASSERTED CLAIMS OF U.S. PATENT NO. 4,682,857

INFRINGEMENT CLAIM CHART

| CLAIM | INFRINGEMENT |
|---|---|
| 1. In a method of detecting a hot spot on a die or a wafer, said method comprises: | Liquid crystal hot spot detection for wafer level reliability MOT 00001; 00003; 00014. |
| applying a liquid crystal to form a liquid crystal film on the top surface of said die or said wafer, adjusting the thickness of said liquid crystal film with a thickness adjustment process; | Fig. 10-Fig. 12 on MOT 00010; ¶2-4 on MOT 00011. |
| placing said die or said wafer on the stage of a microscope that has a polarized illuminating light and an analyser, said analyser is placed on the viewing path of said microscope, said polarizer and said polarized illuminating light are cross polarized; said polarized illuminating light illuminates said die or said wafer that are placed on said stage; | Metallurgical microscope with polarizing filters. MOT 00002; 00007-8; 00011; and 00014. |
| delivering a current to the site of said hot spot of said die or said wafer by a current injecting means; | ESM-200 and Tektronics Curve Tracer. MOT 0012-21. ESM-200 and Tektronics Curve Tracer. ISSI may have used other hardware not presently known. |
| controlling the temperature of said liquid crystal film with a temperature control means; | Technology Associates Kit 4300 calls for wafer chucks or infrared heating lamp. ISSI may have used other hardware not presently known. ISSI admitted it uses a hot air gun to control temperature. |
| locating a change in optical property on said liquid crystal film by a means of viewing said liquid crystal film through said analyser, using a differentiation means to confirm said change is induced by a localized phase transition in said liquid crystal film, thus said hot spot is located at location where said localized phase transition takes place; | See pp. MOT 00002; 00007-8; 00011; and 00014. |
| wherein the improvement comprises: | |
| an infinitesimal temperature control method for controlling the temperature of said liquid crystal film; said infinitesimal temperature control method comprises an operation on a heating system; | See Fig. 9 on MOT 00009. |
| said heating system comprises: | |

| CLAIM | INFRINGEMENT |
|---|---|
| a power supply means; a heat generating means; and an adjustment means; | The wafer chuck and infrared heating lamp equipment suggested in the Technology Associates brochure has a power supply, a conductive heating element (wafer chuck) or radiant heating (infrared lamps) plus a way to adjust the temperature set point and the amount of heat output from the heat generating means. When using a hot air gun, the heat output may be adjusted or controlled by the fan velocity, heat intensity and/or the proximity (angle and/or distance) of the hot air to the device under test coated with the liquid crystal. ISSI may have used other hardware not presently known. |
| said power supply means delivers power to said heat generating means, said heat generating means generates heat for heating up said liquid crystal film, said adjustment means controls the heating output magnitude of said heat generating means, said adjustment means also controls the turning on and turning off of said heat generating means, the action of said turning on and turning off of said heat generating means brings said temperature of said liquid crystal film to an infinitesimally close below the phase transition temperature of said liquid crystal for a limited length of time, whereby enabling said hot spot of an arbitrary small power level on said die or said wafer to produce said localized phase transition in said liquid crystal film, for said limited length of time; a reduction in said heating output magnitude prolongs said limited length of time, whereby increasing the chances of detecting said localized phase transition; said operation comprises: | See Fig. 9. MOT 00009. The hot air gun may be turned on and off, and may control the output magnitude at zero or full power, and may be adjusted or controlled by the fan velocity, heat intensity and/or the proximity (angle and/or distance) of the hot air to the device under test coated with the liquid crystal. ISSI may have used other hardware not presently known. |
| step (a): adjusting said adjusting means to an output level such that the combined heating from said heat generating means and said current is sufficient to heat up said liquid crystal film that at said site to beyond said phase transition temperature; | See Fig. 9. MOT 00009. |
| step (b): turning off said heating means to allow said liquid crystal film to be cooled below said phase transition temperature; | See Fig. 9. MOT 00009. |

| CLAIM | INFRINGEMENT |
|---|---|
| step (c): turning on said heat generating means to heat up said liquid crystal, till said liquid crystal film at said site is heated to beyond said phase transition temperature; | See Fig. 9. MOT 00009. |
| step (d): if said hot spot cannot be detected because said limited length of time is too short, then reducing said output level to a low output level such that the combined heating from said heat generating means and said current is still sufficient to heat up said liquid crystal film that at immediate adjacent area of said site to beyond said phase transition temperature; then repeating said step (b) and said step (c); | See Fig. 9. MOT 00009. "If" is not a limitation, so steps (d) and (e) may not be required limitations. |
| step (e): repeating said step (d) till said limited length of time is long enough such that said hot spot can be detected by said method. | See Fig. 9. MOT 00009. "If" is not a limitation, so steps (d) and (e) may not be required limitations. |
| 4. The method as recited in claim 1, wherein said thickness adjustment process comprises: | See claim 1 above. |
| cooling down said liquid crystal film to below said phase transition temperature; | Fig. 10-12, MOT 00010; see process described at MOT 00011. |
| adding said liquid crystal to said liquid crystal film if said liquid crystal film appears to be dark when viewed through said microscope, or removing part of said liquid crystal from said liquid crystal film if said liquid crystal film appears to be transparent and colorless when viewed through said microscope; | Fig. 10-12; MOT 00010-11. |
| performing the process of said adding or said removing till said liquid crystal film exhibits a transparent and rainbow color when viewed through said microscope. | Fig. 10-12; MOT 00010-11. |
| 5. The method as recited in claim 1, wherein said current is an alternating current. | Insufficient information is available to determine whether this claim was infringed in the relevant time period. |
| 6. The method as recited in claim 5, wherein said alternating current comprises: | Insufficient information is available to determine whether this claim was infringed in the relevant time period. |
| a current with nominal frequency between 0.01 to 16 hertzs, a nominal duty cycle of 10 to 90%. | |
| 7. The method as recited in claim 5, wherein said differentiation means comprises: | See "Detecting the Hot Spot" at MOT 00014. |
| identifying said change that appears as a blinking spot; | See "Detecting the Hot Spot" at MOT 00014; see "Interpretation of Results" at MOT 00015. |

| CLAIM | INFRINGEMENT |
|---|---|
| observing the response of said blinking spot to the variation in said liquid crystal film's ambient temperature: | See "Detecting the Hot Spot" at MOT 00014; see "Interpretation of Results" at MOT 00015. |
| said blinking spot is said hot spot if said blinking spot increases or decreases in blinking spot size as said liquid crystal film's ambient temperature increases or decreases respectively; | See "Detecting the Hot Spot" at MOT 00014; see "Interpretation of Results" at MOT 00015. |
| said blinking spot is not said hot spot if said blinking spot does not change in blinking spot size as said liquid crystal film's ambient temperature increases or decreases. | See "Detecting the Hot Spot" at MOT 00014; see "Interpretation of Results" at MOT 00015. |
| 8. The method as recited in claim 7, wherein said differentiation means further comprises: | Insufficient information is available to determine whether this claim was infringed in the relevant time period. |
| observing the frequency of said blinking spot, that is: said hot spot blinks at a frequency that is the same as the frequency of said alternating current; a non-hot spot which is a voltage induced blinking spot, blinks at faster than or equal to the frequency of said alternating current. | Insufficient information is available to determine whether this claim was infringed in the relevant time period. |
| 9. The method as recited in claim 1, wherein said liquid crystal comprises: | |
| a nematic liquid crystal; or a cholesteric liquid crystal; or a smectic liquid crystal. | The liquid crystal A provided by Technology Associates is a nematic liquid crystal. |
| 10. The method as recited in claim 1, wherein said liquid crystal is 4 CYANO-4'HEXYL-BIPHENYL, trade name is K-18 nematic liquid crystal. | The liquid crystal A provided by Technology Associates is K-18. (MOT 00006.) |

| CLAIM | INFRINGEMENT |
|---|---|
| 11. A new use of liquid crystal for detecting hot spot on die or wafer with a hot spot detection method, said liquid crystal comprises:<br><br>4 CYANO-4'HEXYL-BIPHENYL, trade name is K-18 nematic liquid crystal, or<br><br>4 CYANO-4'PENTYL-BIPHENYL, trade name is K-15 nematic liquid crystal; or<br><br>4 CYANO-4'HEPTYL-BIPHENYL, trade name is K-21 nematic liquid crystal; or<br><br>4 CYANO-4'OCTYL-BIPHENYL, trade name is K-24 nematic liquid crystal; or<br><br>4 CYANO-4'NONYL-BIPHENYL, trade name is K-27 nematic liquid crystal; or<br><br>4 CYANO-4'DECYL-BIPHENYL, trade name is K-30 nematic liquid crystal; or<br><br>4 CYANO-4'UNDERDECYL-BIPHENYL, trade name is K-33 nematic liquid crystal; or<br><br>4 CYANO-4'DODECYL-BIPHENYL, trade name is K-36 nematic liquid crystal. | ISSI bought and used liquid crystal A. |

### B. PRIORITY, CONCEPTION AND REDUCTION TO PRACTICE

Documents corresponding to category (b) of Patent L.R. 3-2, which require evidence of the dates of conception and reduction to practice, establish conception and reduction to practice in early 1984. These documents are part of the Request for Reexamination document filed on July 7, 2003, and the Rile 131 Affidavit filed on February 29, 2005. These documents are publically available from the U.S.P.T.O. For present purposes, constructive reduction to practice of the claimed invention occurred no later than the date of filing the U.S. Application on April 2, 1985.

### C. DOCUMENT PRODUCTION ACCOMPANYING DISCLOSURE

Any documents that correspond to category (a) of Patent L.R.3-2 are part of the documents responsive to Patent L.R. 3-2(c); Tan's documents corresponding to category (b) of Patent L.R.3-2 are described above in Section B. Tan will produce a copy of the documents that correspond to Patent L.R.3-2(c) within 7 days, even though it is publically available and already in possession of defendant ISSI.

Dated: March 20, 2008                                    DERGOSITS & NOAH LLP

                                                         By:  ___/s/_____
                                                              Michael E. Dergosits
                                                              Attorneys for PENG TAN

PLAINTIFF PENG TAN'S DISCLOSURE OF ASSERTED CLAIMS
AND PRELIMINARY INFRINGMENT CONTENTIONS
CASE NO.: C 07-06166 WHA                                                      9

## PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California. I am over the age of 18 and not a party to the case. My business address is Four Embarcadero Center, Suite 1450, San Francisco, California 94111. On March 20, 2008 at about 5:05 PM, I served the foregoing document described as:

**PLAINTIFF PENG TAN'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS**

on Defendant Integrated Silicon Solution, Inc. by transmitting a true copy in Microsoft Word (DOC) and Adobe Portable Document (PDF) formats by electronic mail to the following recipients:

> Justin T. Beck (State Bar No. 531138)
> Alfredo A. Bismonte (State Bar No. 136154)
> Ron C. Finley (State Bar No. 200549)
> Craig Alan Hansen (State Bar No. 209622)
> **Beck, Ross, Bismonte & Finley LLP**
> 50 West San Fernando Street, Suite 1300
> San Jose, CA 95113
> Tel: (408) 938-7900
> Fax: (408) 938-0790
>
> Email: jbeck@beckross.com
> abismonte@beckross.com
> rfinley@beckross.com
> chanson@beckross.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 20, 2008.

_____
Christy Hoffman