# EXHIBIT G

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

*Ex parte* Peng Tan

Appeal 2006-3235
Reexamination Control 90/006,696
Patent 4,682,857
Technology Center 2800

Decided: 10 March 2008

Before JOHN C. MARTIN, LEE E. BARRETT, and JAMESON LEE, *Administrative Patent Judges*.

MARTIN, *Administrative Patent Judge*.

DECISION ON REQUEST FOR REHEARING

Appellant has requested rehearing[1] under 37 C.F.R. § 41.52 of our March 28, 2007, Decision on Appeal ("Decision") affirming the Examiner's

---

[1] Request for Rehearing ("Request") filed June 29, 2007. Appellant filed the Request *pro se*.

rejection of claim 11, the sole appealed claim, under 35 U.S.C. § 102(b) for anticipation by Aszodi.[2]

For the following reasons, we are modifying our reasoning in one respect but are adhering to our affirmance of the rejection.

## *EX PARTE PAPST-MOTOREN*

Appellant questions our refusal (Decision 11-12) to follow *Ex parte Papst-Motoren,* 1 USPQ2d 1655 (BPAI 1986), which after noting that an expired patent cannot be amended, citing 37 C.F.R. § 1.530(d) (1986),[3] held that

> in reexamination proceedings in which the PTO is considering the patentability of claims of an expired patent which are not subject to amendment, a policy of liberal claim construction may properly and should be applied. Such a policy favors a construction of a patent claim that will render it valid, i.e., a narrow construction, over a broad construction that would render it invalid. *See Roberts Dairy Co. v. United States,* 530 F.2d 1342, 1367, [182 USPQ 218, 234] (Ct. Cl. 1976). *See also, ACS Hosp. Systems, Inc. v. Montefiore Hosp.,* [732 F.2d 1572,] 1577, [221 USPQ 929, 932 (Fed. Cir. 1984)]).

---

[2] G. Aszodi, J. Szabon, I. Janossy, and V. Szekely, *High Resolution Thermal Mapping of Microcircuits Using Nematic Liquid Crystals*, 24 Solid-State Electronics 1127-35 (1981).

[3] Section 1.530(d) (1986) read in pertinent part: "No amended or new claims may be proposed for entry in an expired patent. Moreover, no amended or new claims will be incorporated into the patent by certificate issued after the expiration of the patent." The corresponding provisions currently appear in 37 CFR § 1.530(j) (2007), which provides: "No amended or new claims may be proposed for entry in an expired patent. Moreover, no amendment, other than the cancellation of claims, will be incorporated into the patent by certificate issued after the expiration of the patent."

Appeal 2006-3235
Reexamination Control No. 90/006,696

1 USPQ2d at 1656 (alterations in original). *Accord Ex parte Bowles*, 23 USPQ2d 1015, 1017 (BPAI 1991). We initially declined to follow *Papst-Motoren* because we concluded (Decision 11-12) that it is inconsistent with the reasoning in *In re Yamamoto*, 740 F.2d 1569, 1571-72 (Fed. Cir. 1984), which held that the broadest reasonable claim interpretation standard applies during reexamination because a patent owner has a statutory right to present new or amended claims during a reexamination proceeding. Specifically, *Yamamoto* explained:

> We affirm the board's decision to give claims their broadest reasonable interpretation, consistent with the specification, in reexamination proceedings.
> The PTO broadly interprets claims during examination of a patent application since the applicant may "amend his claims to obtain protection commensurate with his actual contribution to the art." *In re Prater*, 415 F.2d 1393, 1404-05, 162 USPQ 541, 550, 56 CCPA 1381, 1395 (1969). This approach serves the public interest by reducing the possibility that claims, finally allowed, will be given broader scope than is justified. Applicants' interests are not impaired since they are not foreclosed from obtaining appropriate coverage for their invention with express claim language. *Id.* at 1405 n.31, 162 USPQ at 550 n. 31, 56 CCPA at 1396 n. 31.
> An applicant's ability to amend his claims to avoid cited prior art distinguishes proceedings before the PTO from proceedings in federal district courts on issued patents. When an application is pending in the PTO, the applicant has the ability to correct errors in claim language and adjust the scope of claim protection as needed. This opportunity is not available in an infringement action in district court....
> The same policies warranting the PTO's approach to claim interpretation when an original application is involved have been held applicable to reissue proceedings because the reissue provision, 35 U.S.C. § 251, permits amendment of the claims to avoid prior art. [Citation omitted.] The reexamination

3

> law . . . gives patent owners the same right: [quoting 35 U.S.C. § 305 (1982)].
> Appellant therefore had an opportunity during reexamination in the PTO to amend his claims to correspond with his contribution to the art. The reasons underlying the PTO's interpretation of the claims in reissue proceedings therefore justify using the same approach in reexamination proceedings.

740 F.2d at 1571-72. Presumably because the patent at issue in *Yamamoto* had not expired and was not expected to expire during the course of the reexamination proceeding,[4] the court did not address the question of how to construe the claims of such a patent.

After further consideration, we conclude that *Papst-Motoren's* reasoning is not inconsistent with *Yamamoto* and accordingly will construe claim 11, if possible, to preserve its validity. However, as pointed out in the Decision (at 10 n.18), that construction standard is limited to resolving ambiguities in a claim:

> While we have acknowledged the maxim that claims should be construed to preserve their validity, we have not applied that principle broadly, and we have certainly not endorsed a regime in which validity analysis is a regular component of claim construction. *See Nazomi Communications [Inc. v. ARM Holdings, PLC]*, 403 F.3d [1364,] 1368-69 [(Fed. Cir. 2005)]. Instead, we have limited the maxim to cases in which "the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous." *Liebel-Flarsheim [Co. v. Medrad, Inc.]*, 358 F.3d [898,] 911 [(Fed. Cir. 2004)] [other citations omitted].

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) (en banc).

---

[4] The involved Yamamoto Patent, No. 3,747,228, expired in July 1990, four years after the July 22, 1986, issue date of the Reexamination Certificate.

Appeal 2006-3235
Reexamination Control No. 90/006,696

*Accord, Cross Medical Prod. Inc. v. Medtronics Sofamor Danek, Inc.*, 424 F.3d 1293, 1304 (Fed. Cir. 2005). It is improper to use the possible invalidity of the claims, if broadly construed, as the reason for construing them narrowly. *The Saunders Group, Inc. v. ComforTrac, Inc.*, 492 F.3d 1326, 1335 (Fed. Cir. 2007) (citing *Liebel-Flarsheim*, 358 F.3d at 911).

We will construe Appellant's patent claim 11 in accordance with the foregoing principles and other claim construction principles that district courts apply to patent claims, with the exception of the presumption of validity under 35 U.S.C. § 282. *See In re Etter*, 756 F.2d 852, 858 (CCPA 1985) ("We hold . . . that § 282 has no application in reexamination proceedings.").

"In determining the meaning of the disputed claim limitation, we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006) (citing *Phillips*, 415 F.3d at 1312-17).

For the reasons given in the Decision and below, we conclude that claim 11 is broad without being ambiguous and thus is not amenable to being narrowly construed under the validity maxim of *Papst-Motoren* and *Phillips*, with the result that claim 11 is anticipated by Aszodi.

## THE EXAMINER'S "ADMISSIONS"

Appellant (Request 2-4) argues that we overlooked the Examiner's "admission" that "Aszodi does not disclose the identical invention to that disclosed in the '857 specification" (Answer 16) and his "admission" that

5

Appeal 2006-3235
Reexamination Control No. 90/006,696

> it is important to note that <u>the technique described by the Aszodi reference and the technique described by the '857 patent differ in significant ways. Aszodi's technique is directed to obtain a thermal mapping of the entire surface of a chip</u>, with the temperature tending to vary gradually, while the <u>'857 patent is directed to identifying the location of a point heat source, ignoring the temperatures on the rest of the chip; the goals of the techniques and the information obtained by them are therefore different.</u>

Answer 16. However, as is evident from the passage that contains the first "admission," reproduced below, the Examiner's comments reflect a comparison of Appellant's Specification and drawings with Aszodi's disclosure rather than a comparison of Appellant's claim 11 with Aszodi's disclosure. That passage reads: "On p. 38-40, the patentee argues that Aszodi does not disclose the identical invention to claim 11. This is not persuasive. *Aszodi* does not disclose the identical invention to that disclosed in the '857 specification; it *does disclose an invention within the scope of claim 11.*" Answer 24, 2d full para. (emphasis added).

### WHETHER THE SPECIFICATION DISCLAIMS THERMAL ANALYSIS OF NONDEFECTIVE DIES OR WAFERS

In our Decision (at 45), we held that the claim does not "preclude knowledge of the heater temperature, ambient temperature, and phase transition temperature, as is allegedly required by Aszodi. Br. 40, paras. 9-11." Appellant argues (Request 4-5) that in construing the claim to be broad enough to read on Aszodi's thermal analysis process, which requires prior knowledge of the liquid crystal phase transition temperature in order generate the isotherms depicted in Figure 6(a), we overlooked the fact that

6

Appeal 2006-3235
Reexamination Control No. 90/006,696

Appellant's Specification explains that "[t]he exact temperature of each phase transition is not measured, and is not important to this invention" (col. 3, l. 68 to col. 4, l. 1). We understand Appellant's position to be that the quoted language constitutes a disclaimer of hot spot detection methods that require prior knowledge of the phase transition temperature.

> *Phillips* explains that
>
> the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).

415 F.3d at 1316. For example, the *SciMed* court construed the claim language "inflation lumen . . . *separate from* the guide wire lumen" (emphasis added) to exclude side-by-side lumens, citing, *inter alia*, the specification's explanation that "all embodiments of the present invention contemplated and disclosed herein" employ an "annular" inflation lumen surrounding the guide wire lumen. *SciMed*, 242 F.3d at 1340, 1343. The *SciMed* court also discusses the following cases, wherein the court relied on the specifications to narrowly construe various claim terms: (1) *Wang Labs, Inc. v. America Online, Inc.*, 197 F.3d 1377, 1382-83 (Fed. Cir. 1999) (finding that the specification limits "frame" in the claim to character-based systems because the only system described and enabled in the patent specification uses a character-based protocol, and because the references to bit-mapped protocols in the specification did not describe them as included in the applicant's invention and the specification would not have been so understood by a person skilled in the field of the invention) (citing *Modine*

Appeal 2006-3235
Reexamination Control No. 90/006,696

*Manufacturing Co. v. United States International Trade Commission*, 75 F.3d 1545, 1551 (Fed. Cir. 1996) ("when the 'preferred embodiment' is described as the invention itself, the claims are not entitled to a broader scope than that embodiment")); (2) *Cultor Corp. v. A.E. Staley Manufacturing Co.*, 224 F.3d 1328, 1331 (Fed. Cir. 2000) (construing "polydextrose" in claim as limited to polydextrose prepared using a citric acid catalyst because the written description explicitly limited the subject matter to a polydextrose purification process using a citric acid catalyst); (3) *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1581 (Fed. Cir. 1997) (narrowly construing "passage" in the claim because all of the "passage" structures contemplated by the written description were either non-smooth or conical and because the written description expressly distinguished over prior art passages by stating that those passages are generally smooth-walled); and (4) *Toro Co. v. White Consolidated Industries, Inc.*, 199 F.3d 1295, 1302 (Fed. Cir. 1999) (construing claim term "including" to mean permanently attached because the specification and drawings showed the ring as part of and permanently attached to the cover and did not illustrate or describe any other structure, and because the specification described the advantages of the unitary structure as important to the invention).

In contrast to the specifications discussed in the above cases, the passage at issue in Appellant's Specification does not reveal an intent to disclaim hot spot detection methods that require prior knowledge of the phase transition temperature, as in Aszodi. To the contrary, the following discussion of Step 4 of Appellant's process suggests it would be advantageous to have prior knowledge of the phase transition temperature: "Step S4: Adjust the power supply 5 till the solid state temperature sensor 21

reads a temperature of about 0.2 degree Celsius below the phase transition temperature 32" (col. 6, ll. 30-33).

Nor, for the reasons given at pages 12-16 of the Decision, does the Specification considered as a whole demonstrate an intent to disclaim thermal analysis of nondefective dies or wafers.[5]

## PROSECUTION HISTORY

The patent under reexamination issued from Application 06/718,866, filed April 2, 1985. The application as filed contained claims 1-4, all independent.[6] The Examiner rejected claims 2 and 3 under 35 U.S.C. § 102(e) for anticipation by Burns U.S. Patent 4,242,635 (Nov. 6, 1986,

---

[5] Appellant's reliance (Request 3, 6, 7) on the following cases as support for the proposition that a claim cannot be broader than its associated disclosure is misplaced, because those cases are not binding precedent on this Board: *Flowers v. Austin-Western Co.*, 149 F.2d 955 (7th Cir. 1945); *Specialty Equipment and Machinery Corp. v. Zell Motor Car Co.*, 113 F. Supp. 161 (D.C. Md. 1953); *Plax Corp. v. Precision Extruders, Inc.*, 239 F.2d 792 (3d Cir. 1957); *Oregon Chain Saw Corp. v. McCulloch Motor Corp.*, 323 F2d 758 (9th Cir. 1963); *City of Grafton, W. Va. v. Otis Elevator Co.*, 166 F.2d 816 (4th Cir. 1948).

[6] A copy of the Specification (including claims) of Application 06/718,866 as filed is enclosed, as are copies of the Office Action and responsive Amendment discussed below.

Appeal 2006-3235
Reexamination Control No. 90/006,696

Office Action 2-3).[7] Of the rejected claims, only claim 2 employed the term "hot spot":

> 2. A method of controlling the temperature of the liquid crystal film on the die of an integrated circuit subjected to *a hot spot detection test*, which comprises:
> step 1; adjusting the setting of the variable power level controller of a said power supply to a power level;

---

[7] Application claim 4 recited in its preamble and first method step the subject matter of what was to become patent claim 11:

> step 1; spreading
> 4. A process of identifying a hot spot in a liquid crystal hot spot detection test, which comprises:
> 4 CYANO-4'HEXYL-BIPHENYL, trade name is K-18 nematic liquid crystal[;] or
> 4 CYANO-4'PENTYL-BIPHENYL, trade name is K-15 nematic liquid crystal; or
> 4 CYANO-4'HEPTYL-BIPHENYL, trade name is K-21 nematic liquid crystal; or
> 4 CYANO-4'OCTYL-BIPHENYL, trade name is K-24 nematic liquid crystal; or
> 4 CYANO-4'NONYL-BIPHENYL, trade name is K-27 nematic liquid crystal; or
> 4 CYANO-4'DECYL-BIPHENYL, trade name is K-30 nematic liquid crystal; or
> 4 CYANO-4'UNDERDECYL-BIPHENYL, trade name is K-33 nematic liquid crystal; or
> 4 CYANO-4'DODECYL-BIPHENYL, trade name is K-36 nematic liquid crystaL [sic]; onto the surface of a die or wafer to form a thin layer of liquid crystal film;
> step 2; conducting a said liquid crystal hot spot detection test with a pulsing input to the said die or the said wafer;
> step 3; locating all the blinking spots on the said die or the said wafer;
> step 4; observing the temperature response of the blinking induced by the said pulsing input to the said

10

Appeal 2006-3235
Reexamination Control No. 90/006,696

> such that the temperature of the said liquid crystal film would be heated to beyond one of the phase transition temperatures of the said liquid crystal film;
>
> such that the said temperature of the said liquid crystal film would be increasing very slowly at the temperature just below the said phase transition temperature;
>
> such that the temperature of the said liquid crystal film is brought within an arbitrary small temperature range just below a said phase transition temperature for a limited length of time; and
>
> step 2; adjusting the setting of the said variable power level controller until the said limited length of time is long enough;
>
> such that the periodic phase transition process of the said liquid crystal film is slow enough for human to detect the periodic phase transition.

Specification of '866 Application at 13.

Burns employs what Appellant refers to as "voltage induced blinking" of a liquid crystal material in order to perform "failure analysis" and "design evaluation[s]" (col. 3, l. 20) on integrated circuits. Appellant responded to the rejection by canceling claims 1-4 in favor of new independent claims 5 and 15 (respectively renumbered 1 and 11 upon allowance) and dependent claims 6-14 (March 9, 1987, Amendment, at 14-19). Perhaps because Burns discloses failure analysis, Appellant's reasons (reproduced below) why the

---

> blinking spots;
>
> step 5; eliminating those blinkings that do not change as the ambient temperature rises below the phase transition temperature;
>
> step 6; identifying those blinking spots that increased in blinking size as the ambient temperature rises; the said blinking spots recited in said step 6 are the hot spots.

Specification of '866 Application at 14-15 (emphasis added).

Appeal 2006-3235
Reexamination Control No. 90/006,696

claimed subject matter is distinguishable from Burns do not mention failure analysis, let alone demonstrate an intention to disclaim the use of hot spot detection methods on nondefective dies and wafers:

> Note that Burn's [sic] invention did not have any heating devices while my invention has a heating means to heat up the liquid crystal.
>
> Note that Burn's invention uses only one light beam set; it is used solely for illuminating while my invention uses two light beam sets, one set for illuminating, another set for heating. The heating is the most important factor in my invention while Burn's invention is not concerned with heating.
>
> Note that Burn's invention did not mention the liquid crystal phase transition temperature while my invention repeatedly mentions and utilizes the liquid crystal phase transition temperature.
>
> Note that Burn's invention detects the changes in birefringent property within the liquid crystal phase while my invention detects the change from a liquid crystal phase to a liquid phase.
>
> Note that Burn's invention has a transparent coverplate over the liquid crystal while my invention has no coverplate.
>
> Note that Burn's invention only involves the detection of the voltage pattern on the integrated circuit while my invention involves the detection of heat dissipation on the integrated circuit and is not interested in detection of the voltage pattern.
>
> Burn's patent only involves the detection of the phenomenon known in my patent as the "voltage induced blinkings," while my patent is only interested in detecting the phenomenon known in my application as the "hot spot induced blinking." Burn's patent did not touch on the subject of the "hot spot induced blinking."
>
> The "voltage induced blinking" and the "hot spot blinking" are two very distinct phenomena:
>
>> a) The "voltage induced blinking" is induced by a change in the electric field in the liquid crystal

Appeal 2006-3235
Reexamination Control No. 90/006,696

> which results in a change of both the birefringent property and the light scattering property in the liquid crystal. During this whole changing process, the liquid crystal remains in the liquid crystal phase.
>
> b) The "hot spot induced blinking" is induced by the change in the temperature of the liquid crystal. During this process, the liquid crystal changes from the liquid crystal phase to the liquid phase.
>
> In my application, I have invented a differentiation method to differentiate the "hot spot induced blinking" from the "voltage induced blinking." The differentiation process is the only area in which my patent brings up the subject of the "voltage induced blinking." Note that my invention is interested in differentiating and eliminating "voltage induced blinking" from "hot spot induced blinking" rather than detecting the "voltage induced blinking."

Amendment 20-21.

## APPELLANTS' EXTRINSIC EVIDENCE

While extrinsic evidence "can shed useful light on the relevant art," it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (citations omitted). For the reasons given in the Decision, Appellant's extrinsic evidence (i.e., the Hiatt, Flueren, Stephens, Sinnadurai, and Burgess/Tan articles and the declarations by Jung, Lim, and Burgess) fail to demonstrate that the "hot spot detection method" language of claim 11 would have been understood to exclude thermal analysis of nondefective dies and wafers.

## ARE EIGHT INDEPENDENT INVENTIONS CLAIMED?

Appeal 2006-3235
Reexamination Control No. 90/006,696

Appellant argues (Request 7-11) that claim 11 recites eight independent inventions (i.e., hot spot detection using K-18, or K-15, or K-21, or K-24, or K-27, or K-30, or K-33, or K-36) and that Aszodi allegedly anticipates only one of the them (K-24), with the result that it was error for us to affirm the rejection with respect to the other seven inventions. As support for the proposition that claim 11 recites eight independent inventions, Appellant cites *Changes to Practice for the Examination of Claims in Patent Applications; Notice of proposed rule making*, 71 Fed. Reg. 61 (Jan. 3, 2006), *reprinted in* 1302 Off. Gaz. Pat. & Trademark Office 1329 (Jan. 24, 2006), as support for Appellant's proposition that the

> PTO recognizes and admits that a claim in alternative form may contain multiples discrete inventions, this fact is manifested in the January 3, 2006 PTO proposed rule § 1.75(b)(1), the PTO asked for public comment whether the PTO should count each alternative species in a Markush Claim (or any alternative claim) as a separate claim for the purposes of § 1.75(b)(1). It is clear, the PTO consider each alternative as an invention, or even a separated claim.

Request 7.[8] Even assuming for the sake for argument that claim 11 can accurately be characterized as alternatively reciting eight independent inventions, Appellant's position overlooks the fact that the rejection is directed at the claim as a whole, taking into account its alternative structure, and cannot be affirmed with respect to one alternative and reversed with

---

[8] Section 1.75 ("Claims") and other rules were amended effective November 1, 2007. *Changes to Practice for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Application*, 72 Fed. Reg. 46,716 (Aug. 21, 2007), *reprinted in* 1322 Off. Gaz. Pat. & Trademark Office 76 (Sept. 11, 2007).

14

Appeal 2006-3235
Reexamination Control No. 90/006,696

respect to the others. As explained in *Brown v. 3M*, 265 F.3d 1349 (Fed. Cir. 2001):

> When a claim covers several structures or compositions, either generically or as *alternatives*, the claim is deemed anticipated if any of the structures or compositions within the scope of the claim is known in the prior art. *Titanium Metals Corp. of America v. Banner*, 778 F.2d 775, 782, 227 USPQ 773, 778 (Fed. Cir. 1985).

265 F.3d at 1351 (emphasis added). The resulting loss of patent protection for hot spot detection methods using any one of the eight recited liquid crystal materials is therefore due to Appellant's choice of claim format and thus does not constitute an unconstitutional "taking" of property under the Fifth Amendment of the U.S. Constitution, as argued by Appellant (Request 9-10).

## APPELLANT'S PROPOSED EQUITABLE SOLUTION

Appellant has proposed that in the event we remain of the view that Aszodi anticipates claim 11 based on Aszodi's use of K-24 liquid crystal material, we adopt the following equitable solution:

> I believe until the PTO have [sic] a new process in place to deal with the Claim 11 situation (a almost expire[d] claim that contained both allegedly both anticipated claim and neither anticipated nor obvious claims), it is only fair that the Board give Claim 11 a narrow interpretation and deem it not anticipated. This action would not be unfair to the public. Because at the end of this brief is Appendix A, in it, The patentee unilaterally make an irrevocable, and retroactive consent of grant the public the free licensing right to use K24 liquid crystal or its mixture, detecting hot spot process. Moreover, with all the argument made by The patentee on this reexamination process, the file wrapper estoppels would

15

> already give public a right to practice the Aszodi teaching with K24 liquid crystal.
>
> There is no law that prohibits the Board or PTO from striking down the invention that involve K-24 liquid crystal from Claim 11, but allowing all other K-series liquid crystals to remain. Considering the industry only practice K-18, not K-24, I do not object[] if the Board has any mean to merely voiding the K-24 INVENTION, but leaving the SEVEN INVENTION[S] intact.
>
> This patent already expired. It is not fair for the patentee [to] wait for the PTO to take years to come out with a new regulation or process to deal with Claim 11 situation. I think my proposal is fair and equitable to the patentee, the public and the PTO.

Request 15.

Appellant is incorrect to argue that no law prohibits the Board or PTO from striking down the invention that involves K-24 and allowing the other K-series liquid crystals to remain. What Appellant is asking us to do is to effectively treat Appendix A as a disclaimer of the "or K-24" language in the claim. As explained in Donald S. Chisum, 4 *Chisum on Patents* § 11.07[2] (2007), although it was possible prior to the 1952 Patent Act for a patentee to disclaim part of a claim, that practice that ended with the adoption the 1952 Patent Act, which was codified as Title 35 of the United Sates Code. Section § 253 ("Disclaimers") limits disclaimers to complete claims:

> A patentee, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of any *complete claim*, stating therein the extent of his interest in such patent. . . .
>
>    In like manner any patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.

35 U.S.C. § 253 (2006) (emphasis added).

Appeal 2006-3235
Reexamination Control No. 90/006,696

The PTO rules accordingly limit disclaimers of claimed subject matter to complete claims. *See* 37 CFR § 1.321(a) (2007) ("A patentee owning the whole or any sectional interest in a patent may disclaim any *complete* claim or claims in a patent.") (emphasis added).

In any event, PTO rules restrict the presentation of new arguments in and evidence with a request for rehearing before the Board to circumstances that are not present in this case. As explained in 37 C.F.R. § 41.52 (2007),

> [a]rguments not raised in the briefs before the Board and evidence not previously relied upon in the brief and any reply brief(s) are not permitted in the request for rehearing except as permitted by paragraphs (a)(2) and (a)(3) of this section. . . .
> (2) Upon a showing of good cause, appellant may present a new argument based upon a recent relevant decision of either the Board or a Federal Court.
> (3) New arguments responding to a new ground of rejection made pursuant to § 41.50(b) are permitted.

## SUMMARY

For the foregoing reasons, we are granting the Request for Rehearing to the extent of agreeing to construe claim 11 in accordance with *Papst-Motoren* but are denying it to the extent Appellant has requested reversal of the rejection.

### DENIED

LEE, *Administrative Patent Judge,* concurring.

Appeal 2006-3235
Reexamination Control No. 90/006,696

      I continue to concur in the affirmance of the rejection for the reasons given in my concurring opinion in the Decision on Appeal.


cc (via U.S. Mail):

<u>Mailing address for Appellant</u>

DERGOSITS & NOAH LLP
Four Embarcadero Center, Suite 1450
San Francisco, CA 94111


<u>Mailing address for Third-Party Requester</u>

Robert A. Westerlund
WESTERLUND-POWELL, P.C.
100 Daingerfield Road, Suite 100
Alexandria, VA 22314-2886



Enclosures:
    (a) Specification of Application 06/718,866, filed April 2, 1985 (now Patent 4,682,857).
    (b) Office Action mailed November 6, 1986.
    (c) Amendment filed March 9, 1987, in Application 06/718,866.