MICHAEL E. DERGOSITS (SBN 118206)
TODD A. NOAH (SBN 152328)
TED K. JOE (SBN 242589)
DERGOSITS & NOAH LLP
Four Embarcadero Center, Suite 1450
San Francisco, California 94111
Tel: (415) 705-6377
Fax: (415) 705-6383
E-mail:  mdergosits@dergnoah.com
         tnoah@dergnoah.com
         tjoe@dergnoah.com

Attorneys for Plaintiff
PENG TAN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCSICO DIVISION

| | |
|---|---|
| PENG TAN,<br><br>    Plaintiff,<br><br>vs.<br><br>INTEGRATED SILICON SOLUTIONS, INC.<br><br>    Defendant. | Case No. Civ. 07-6166 (WHA)<br><br>**PLAINTIFF PENG TAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT INTEGRATED SILICON SOLUTION, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**<br><br>Date:  June 5, 2008<br>Time:  8:00 a.m.<br>Place: Courtroom 9, 19th Floor |

Plaintiff Peng Tan ("TAN") submits this memorandum of points and authorities in opposition to defendant Integrated Silicon Solutions, Inc.'s ("ISSI") motion for summary judgment of invalidity of U.S. Patent No. 4,682,857 ("the '857 patent"). In support of its opposition, TAN submits herewith the declaration of Frank Jung.

## I. INTRODUCTION

The only claim limitation at issue in this motion is the means-plus-function limitation "heat generating means." The parties do not dispute the meaning of this limitation as construed in view of the specification of the '857 patent. Indeed, the parties agree that the function performed by this means is the generation of heat and the structures disclosed in the '857 specification for performing this function are radiative heating lights, conductive hot plates, convective ovens, and equivalents of these structures. The dispute is whether this construction of "heat generating means" was supported by the original specification so that when TAN amended the specification to expressly disclose convective ovens, no new matter was introduced in violation of 35 U.S.C. § 132.

Under 35 U.S.C. § 112, ¶ 6, a means-plus-function limitation is properly "construed to cover the corresponding structure . . . described in the specification and equivalents thereof." It is well established that the disclosure of structure corresponding to the means-plus-function limitation may be implicit or inherent in the written description if it would have been clear to one skilled in the art what structure must perform the function recited in the means-plus-function limitation.

The claims as originally filed contained the term "heating lamp." TAN replaced these claims with new claims (now claims 1-10) that used "heat generating means" rather than "heating lamp." At the same time, TAN amended the specification to expressly disclose "convective ovens" as structure corresponding to the "heat generating means." This structure was in addition to the originally disclosed radiative heating lamps and conductive hot chucks.

There is no dispute between the parties that the original specification disclosed radiative heating lamps and conductive heating using conductive hot chucks or hot plates. Moreover, as the concurrently filed Declaration of Frank Jung demonstrates, a person of ordinary skill in the art reading TAN's original specification would have understood that "convective ovens" were structurally equivalent to the expressly disclosed radiative heating lamps and conductive hot chucks and thus were covered by the "heat generating means" limitation. Thus, a convective oven was inherently disclosed as a § 112, ¶ 6 equivalent in the original application so TAN's amendment to the specification to expressly add this structure simply made explicit what was implicit in the disclosure and did not introduce any new matter. To find otherwise makes no logical sense.

In its motion, ISSI has framed the issue as follows: claims 1 and 4-10 are invalid because they incorporate "new matter" prohibited by 35 U.S.C. § 132 and therefore are not supported by the original disclosure under 35 U.S.C. § 112, ¶ 1. (ISSI Memo., p. 1, lines 3-5, pp. 5-6.) But this is not the determination that the Court must make on this motion. Rather, the Court must determine whether TAN's <u>original</u> application complied with § 112, ¶ 6, and thus § 112, ¶ 2, by disclosing sufficient structure corresponding to the "heat generating means" limitation such that the amendment to the specification expressly adding convective ovens did not introduce any new matter.

ISSI's motion is fatally defective because it fails to address § 112, ¶ 6 equivalents in its analysis. More specifically, ISSI fails to provide any evidence of whether one of ordinary skill in the art reading the original specification would have understood that a convective oven is an equivalent structure for performing the function of the "heat generating means." In fact, ISSI completely ignores the perspective of one skilled in the art and simply concludes that the "heat generating means" limitation, properly construed to cover "convective ovens," is not supported by the originally filed specification because convective ovens were not expressly disclosed. ISSI overlooks the unambiguous wording of § 112, ¶ 6 and the wealth of Federal Circuit case law that support the conclusion that structural equivalents need not be expressly disclosed in the specification.

In short, ISSI's motion must be denied. ISSI has failed to meet its heavy burden of providing clear and convincing evidence that claims 1 and 4-10 are invalid. The amendment to the specification did not add new matter in violation of 35 U.S.C. § 132 since the original application supported the construction of "heat generating means" limitation to include convective ovens.

## II.    ARGUMENT

### A.    ISSI HAS MISSED THE ISSUE BY FOCUSING ON THE WRITTEN DESCRIPTION REQUIREMENT OF § 112, ¶ 1

ISSI mistakenly contends that claims 1 and 4-10 are invalid under 35 U.S.C. § 112, ¶ 1 since they are allegedly supported by new matter. (ISSI Memo., p. 6.) ISSI is apparently confused about the meaning of and the relationship between paragraphs 1, 2 and 6 of 35 U.S.C. § 112. In this regard, ISSI

relies on *Turbocare Div. of Demag Delaval Turbomachinery Corp. v. General Electric Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001), which is completely inapposite because it does not address means-plus-function limitations. The claim limitation at issue in *Turbocare* was "a flat spring interposed between . . . ." *Id.* The original application contained the statement "[f]lat, S-shaped springs are illustrated, but others can be employed." *Id.* During prosecution, the applicant amended this sentence to read "S-shaped springs are illustrated, but flat springs and others can be employed." *Id.* The defendant argued that this amendment added new matter, namely flat springs, and therefore the claim was invalid for lack of written description under § 112, ¶ 1. The plaintiff countered by arguing that the amendment simply clarified the original specification since flat springs were not illustrated but were among those that the specification indicated could be used. The Federal Circuit concluded that there was an issue of fact as to whether the amendment, which explicitly disclosed flat springs, added new matter to the specification and therefore reversed the summary judgment of invalidity. *Id.* at 1118-19. The court's decision in the case had nothing to do with means-plus-function limitations or the requirements for satisfying § 112, ¶ 2.

      The issue before this Court is not whether claims 1 and 4-10 comply with the written description requirement of § 112, ¶ 1, but whether, in utilizing the means-plus-function device of § 112, ¶ 6, the original specification satisfied the claiming requirements of § 112, ¶ 2 regardless of the amendment expressly adding convective ovens to the specification. *In re Dossel*, 115 F.3d 942, 946 (Fed. Cir. 1997). In other words, the correct inquiry is: when TAN presented new claims that replaced "heating lamp" with "heat generating means," did the original application disclose sufficient structure to support the construction of the "heat generating means" limitation to include convective ovens so that Mr. Tan's simultaneous amendment to the specification to include conductive ovens did not introduce any new matter.

      The determination whether a claim is invalid as indefinite under § 112, ¶ 2 "depends on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the specification. *Atmel Corporation v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999). The analysis under § 112, ¶ 2 is inextricably intertwined with claim construction and, in the § 112, ¶ 6 context, a court's determination of the structure that corresponds to a particular means-plus-function limitation is a matter of claim construction. *Atmel Corporation*, 198 F.3d at 1379. It is a

PLAINTIFF'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY
Case No. C 07 6166 WHA

-4-

fundamental principle of claim drafting that if one employs means-plus-function language in a claim, one must set forth in the specification adequate disclosure showing what is meant by the claim language. *In re Donaldson Co, Inc.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994). Failure to adequately describe the necessary structure in the written description means that the drafter has failed to comply with § 112, ¶ 2. *In re Dossel*, 115 F.3d at 946. Compliance with § 112, ¶ 6 necessarily results in compliance with § 112, ¶ 2. *Id.*

To decide this motion, the Court needs to construe the "heat generating means" limitation in view of the original specification. Once the Court concludes that the corresponding structure described in the original specification and equivalents for performing the function of the "heat generating means" included radiative heating lamps, conductive hot chucks and convective ovens, then it must conclude that convective ovens were inherently disclosed in the original application. As set forth below, one skilled in the art, after reading the original application, would have understood that convective ovens were structurally equivalent to radiative heating lamps and conductive hot chucks/hot plates. Therefore, convective ovens were inherently disclosed in the original application for purposes of § 112, ¶ 6. TAN's amendment to the specification to expressly recite convective ovens did not introduce any new matter because it simply made explicit what was already implicit in the original application.

### B. THE UNDISPUTED CONSTRUCTION OF THE "HEAT GENERATING MEANS" LIMITATION WAS SUPPORTED BY THE ORIGINAL APPLICATION

A literal reading of §112, ¶ 6 necessarily allows for equivalents not expressly disclosed in the specification. More specifically, §112, ¶ 6 reads in pertinent part:

> such claim shall be construed to cover the corresponding structure, material, or acts described in the specification **and equivalents thereof**. (Emphasis added.)

According to its plain meaning, § 112, ¶ 6 only requires some structure "described' in the specification. The statute does not require that the equivalents to the described structure(s) also be described in the specification. If that were the case, the statute would read something like: "shall be construed to cover the corresponding structure, material, or acts **and equivalents thereof** described in

the specification." But the statute does not read this way and only requires that some structure corresponding to the means-plus-function limitation be described. *See Atmel Corporation*, 198 F.3d at 1382 ("All one needs to do in order to obtain the benefit of the claiming device is to recite some structure corresponding to the means in the specification, as the statute states, so that one can readily ascertain what the claim means and comply with the particularity requirement of ¶ 2.")

Accordingly, the Federal Circuit has repeatedly made clear that the disclosure of structure corresponding to the means-plus-function limitation may be implicit or inherent in the written description if it would have been clear to one skilled in the art what structure must perform the function recited in the means-plus-function limitation. *Atmel Corporation*, 198 F.3d at 1380. *See also In re Dossel*, 115 F.3d at 946-947; *In re Hayes Microcomputer Products, Inc. Patent Litigation*, 982 F.2d 1527 (Fed. Cir. 1992)("A patent applicant must "disclose some structure in the specification for all 'means' recitations in the claims" but need not "disclose every means for implementing the stated function."); *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569 (Fed. Cir. 1991)(Section 112, paragraph 6 precludes an overly narrow construction that would restrict the scope of the claims to those means expressly disclosed in the specification.), and *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339 (Fed. Cir. 2001)("Drafters of means-plus-function claim limitations are statutorily guaranteed a range of equivalents extending beyond that which is explicitly disclosed in the patent document itself.").

ISSI admits that the original application expressly disclosed radiative heating lamps. (ISSI Memo, pp. 5-6.) Thus, under § 112, ¶ 6 radiative heating lamps were one of the structures described in the original application corresponding to the "heat generating means." ISSI also acknowledges that the original application disclosed conductive heating; however, ISSI contends that "[c]onductive heating was mentioned only as an unsuitable prior art technique." (ISSI Memo, p. 5, lines 16-17.)

The Federal Circuit has explained that a means-plus-function claim can cover alternative prior art described in the specification as long as the specific structure was not described in the specification as being incapable of performing the function of the means-plus-function limitation. *Clearstream Wastewater Systems, Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440 (Fed. Cir. 2000). ISSI would have the Court believe that TAN disclosed in the '857 patent that conductive heating could not be used with the infinitesimal temperature control method to heat liquid crystal for hot spot detection method. This is

incorrect and ISSI's argument here distorts the true invention of the '857 patent. TAN does not claim to have invented conductive hot chucks, or for that matter, radiative heat lamps and convective ovens. Rather, TAN conceived of a liquid crystal hot spot detection method that utilized infinitesimal temperature control.

In the original application, TAN described the advantages of using the infinitesimal temperature control method and pointed out that the prior art use of conductive heating without the infinitesimal temperature control was not effective in hot spot detection. (Bismonte Declaration, Exhibit C, p. ISSI 00007, col. 1, lines 47-56.)[1] More specifically, TAN expressly distinguished the Fleuren reference which disclosed conductive heating of liquid crystal at a constant temperature. In its memorandum, ISSI selectively quotes from the original application and takes the passage out of context. (ISSI Memo., p. 5) In fact, in the application prior to the paragraph quoted by ISSI, TAN explained the problems with the prior art procedures using liquid crystal for hot spot detection as follows:

> <u>Before this invention</u>, the temperature control process is [sic] to keep the liquid crystal film's temperature constant. The disadvantage of the constant temperature method is [sic] that there is no instrument that could control a temperature infinitesimally close to a specified temperature. (Bismonte Decl., Exhibit A, at ISSI 00015.) (Emphasis added.)

TAN did not indicate that conductive heating was an "unsuitable prior art technique." Rather, as set forth above, TAN simply distinguished the prior art methods, such as that described in the Fleuren reference, which applied a constant temperature using conductive heating. Nowhere in the original application did TAN contend that conductive heaters, such as conductive hot chucks and hot plates, could not be used for infinitesimal temperature control in a hot spot detection method. In short, despite ISSI's assertion, TAN disclosed the use of conductive heating for liquid hot spot detection methods using infinitesimal temperature control as opposed to constant temperature.

The Court must now determine whether under § 112, ¶ 6 convective ovens were described in the original application, albeit inherently. While TAN acknowledges that convective ovens were not

---

[1] For the convenience of the Court, rather then submitting multiple copies of exhibits, TAN relies upon the exhibits attached to the Declaration of Alfredo Bismonte in Support of ISSI's Motion for Summary Judgment, D.I. No. 32, referred to as "Bismonte Decl.")

expressly described in the original specification, ISSI has provided no evidence to dispute TAN's evidence that they were inherently disclosed since one skilled in the art would have understood that they were structurally equivalent to radiative heating lamps and conductive hot chucks/plates. The original specification made clear to one skilled in the art that any of the prior art structures used for heating integrated circuits or liquid crystal, including radiative heat lamps, conductive hot chucks and convective ovens, could be used in TAN's infinitesimal temperature control method. (Jung Decl., ¶ 5-8 .)

ISSI provides absolutely no evidence that the use of convective ovens in TAN's infinitesimal temperature control method is not supported by the original application. Instead, ISSI makes the bald assertion that there is "nothing in the original application that would disclose to a person of skill that in 1985 Tan necessarily believed that a 'convective oven' was part of his invention." (ISSI Memo., p. 7, lines 4-6.) In reaching this unsupported conclusion, ISSI completely ignores the last three words of § 112, ¶ 6 which read "and equivalents thereof." In doing so, ISSI completely failed to provide any evidence of the understanding that one skilled in the art would have after reading the original application. Had it done so, ISSI would have learned that one skilled in the art would have understood that a convective oven is an equivalent structure to the radiative heating lights and conductive hot chucks/plates described in the original application. (Jung Decl., ¶ 5-8.) More specifically, it would have learned that in the semiconductor industry, people skilled in the art knew that radiative heat lamps, conductive hot chucks and convective ovens could all be used for heating liquid crystal in a hot spot detection method. (Jung Decl., ¶ 5-8.) Therefore, when TAN amended the specification to expressly recite convective ovens, he did not introduce new matter because convective ovens were already inherently disclosed structural equivalents in the original application.

In short, ISSI completely ignored § 112, ¶ 6 equivalents and whether one skilled in the art would have understood that convective ovens were structurally equivalent to radiative heating lights and conductive hot chucks, which were disclosed in the original application as corresponding structure for the "heat generating means" limitation. Because of this omission, ISSI's motion must be denied as a matter of law.

### C. THE EXAMINER, WHO IS PRESUMED TO HAVE PROPERLY DONE HIS JOB, DID NOT ISSUE A NEW MATTER OBJECTION TO TAN'S AMENDMENT.

Contrary to the footnote on page 6 of ISSI's memorandum, the Examiner's allowance of TAN's amendment to the specification without a new matter objection "is entitled to an especially weighty presumption of correctness." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574-75 (Fed. Cir. 1992). Indeed, during prosecution of the '857 patent, TAN openly submitted an amendment seeking to add the language quoted at page 3 of ISSI's memorandum in three separate locations in the specification of the application as originally filed. According to the Manual of Patent Examining Procedure ("MPEP"), the Examiner was tasked with the responsibility of determining whether such amendments introduced new matter. *See* MPEP § 706.03(o) ("In the examination of an application following an amendment thereof, the examiner must be on alert to detect new matter."). The Examiner had every opportunity to object to the proposed amendments on the grounds that they introduced new matter. The Examiner, who is presumed to have done his job correctly, unequivocally concluded that the amendments did not introduce any new matter and entered the amendments without objection. This is not surprising since radiant and conductive heating were disclosed in the application as filed and convective heating, as described above, is a well known equivalent to radiant and convective heating. Therefore, the Examiner's conclusion that no new matter was introduced by TAN's amendments is entitled to an "especially weighty presumption of correctness."

### D. COLLATERAL ESTOPPEL DOES NOT APPLY BECAUSE THE DECISION OF THE PATENT OFFICE IS NOT FINAL

In the reexamination of the '857 patent, the Examiner entered a final rejection of claim 11 as being anticipated by the prior art. TAN appealed this rejection to the USPTO Board of Patent Appeals and Interferences ("BPAI"), which affirmed the Examiner's rejection. Thereafter, TAN sought reconsideration by the BPAI, whose decision affirming the rejection of claim 11 was issued on March 10, 2008. Subsequent to the filing of the present motion, TAN filed a Notice of Appeal to the United States Court of Appeals for the Federal Circuit. (Exhibit A to the Declaration of Michael E. Dergosits.)

Even though ISSI may be technically correct that the pendency of TAN's Federal Circuit appeal does not *by itself* bar this Court's application of collateral estoppel, ISSI fails to address the significant complications that would arise in this case if an order is now entered holding claim 11 invalid and then the Federal Circuit reverses the BPAI. *See Mendenhall v. Barber-Greene Co.,* 26 F.3d 1573, 1578, n. 5 (Fed. Cir. 1994). In particular, the Court would be faced with motion practice to undo its judgment of invalidity and other pre-trial and trial scheduling issues if the Federal Circuit reverses the BPAI.

Because of these unwarranted complications, this Court should defer ruling on this aspect of defendant's motion at this time, and defer claim construction of claim 11 until closer to trial. At the very least, this Court should not enter an order concerning the invalidity of claim 11 that could later preclude TAN from asserting claim 11 against ISSI in this case if and when the Federal Circuit reverses the final rejection and affirms the validity of claim 11.

### III. CONCLUSION

For the reasons discussed above, this Court should deny ISSI's motion for summary judgment of invalidity.

Dated: May 15, 2008                           DERGOSITS & NOAH LLP


By: /s/ Todd A. Noah
    Todd A. Noah
    Attorneys for Plaintiff
    PENG TAN

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Civil L. R. 5-6 on May 15, 2008.

Dated: May 15, 2008                     DERGOSITS & NOAH LLP

                                        By:     /s/
                                                Michael E. Dergosits
                                                Attorneys for PENG TAN